**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **SHANIQ CARMICHAEL,** | ) | |
| | ) | |
| | ) | CIVIL ACTION NO.: |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| **PLANNED PARENTHOOD SOUTHEAST, INC. & PLANNED PARENTHOOD LOS ANGELES,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendants*. | | |

---

**COMPLAINT**

Plaintiff Shaniq Carmichael ("Plaintiff") files this Complaint against Defendants Planned Parenthood Southeast, Inc. ("PPSE") and Planned Parenthood Los Angeles ("PPLA") and alleges as follows:

**INTRODUCTION**

1. This is an action for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

2. Plaintiff is a Black woman and an experienced human-resources executive whom PPSE hired in July 2025 as its Director of People and Culture.

3. After Plaintiff opposed what she reasonably believed was race discrimination against Black leaders and employees, PPSE promoted her in January 2026 to Interim Vice President of People and Operations and increased her annual salary to $160,000.

4. Later that month, PPSE entered into a management agreement under which PPLA supplied interim leadership, affiliate management, organizational planning, and human-resources oversight.

5. Plaintiff reported race discrimination and racially disparate treatment directly to senior PPSE leadership and to PPLA's Chief People and Culture Officer.

6. On February 13, 2026, within days of Plaintiff's protected complaints and less than one month after her promotion, Defendants eliminated Plaintiff's position under the asserted rationale of cost savings or restructuring.

7. Plaintiff had no performance problems, was praised shortly before her termination, and was the only employee selected for termination in the asserted reduction.

8. Defendants terminated Plaintiff because of her race and because she opposed race discrimination.

## PARTIES

9. Plaintiff Shaniq Carmichael is a resident of Georgia and is Black.

10. Defendant PPSE is a corporation conducting business in this District, including at its Atlanta office, and is an employer within the meaning of Title VII.

11. At all relevant times, PPSE employed at least fifteen employees.

12. Defendant PPLA is a separately incorporated Planned Parenthood affiliate that entered into a management agreement with PPSE and provided interim leadership, management support, operational oversight, organizational planning, and human-resources leadership to PPSE.

13. PPLA assigned senior leaders, including its Chief People and Culture Officer, to exercise control over PPSE operations and the fundamental terms and conditions of Plaintiff's employment.

14. PPLA participated directly in the decision to eliminate Plaintiff's position and communicated that decision to Plaintiff.

15. With respect to the employment practices challenged in this Complaint, PPSE and PPLA shared or co-determined matters governing Plaintiff's employment and acted as joint employers, agents, and participants in the discriminatory and retaliatory conduct alleged herein.

## JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under Title VII and 42 U.S.C. § 1981.

17. Venue is proper in this Court under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices occurred in this District, Plaintiff worked in this District, relevant employment records are maintained or administered in this District, and PPSE conducts business in this District.

## ADMINISTRATIVE PREREQUISITES

18. On February 23, 2026, Plaintiff timely filed a Charge of Discrimination against PPSE with the Equal Employment Opportunity Commission, Charge No. 410-2026-06568, alleging race discrimination and retaliation.

19. On June 12, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights.

20. Plaintiff received the Notice of Rights on or after June 12, 2026.

21. Plaintiff filed this action within ninety days after receiving the Notice of Rights.

22. All conditions precedent to Plaintiff's Title VII claims have occurred, been performed, or been waived.

## FACTUAL ALLEGATIONS

### Plaintiff's Employment and Promotion

23. PPSE hired Plaintiff on or about July 7, 2025, as Director of People and Culture at an annual salary of $115,000.

24. PPSE hired Plaintiff to lead and support its human-resources function during a period of organizational instability, leadership conflict, and operational concerns.

25. Plaintiff performed her job competently and professionally, and PPSE did not discipline her for any performance issue.

26. In January 2026, PPSE promoted Plaintiff to Interim Vice President of People and Operations and increased her annual salary to $160,000.

27. The promotion reflected PPSE's confidence in Plaintiff's abilities, business judgment, and leadership and occurred less than one month before her termination.

### Plaintiff Opposes Race Discrimination

28. During Plaintiff's employment, PPSE experienced substantial conflict involving its Board, executive leadership, and employee complaints.

29. Plaintiff became aware of complaints and concerns that Black leaders and employees were being treated more harshly than non-Black employees,

including concerns regarding PPSE Board Chair Karen Doolittle, who is white.

30. In or around November 2025, PPSE investigated allegations against multiple employees.

31. After the allegations against two Black female executives were found unsubstantiated, Ms. Doolittle demanded that PPSE terminate those executives.

32. In her role as PPSE's senior human-resources leader, Plaintiff objected to that proposed treatment and told the CEO and outside counsel that the allegations and resulting treatment appeared racially motivated and that Black leaders were being treated more harshly than similarly situated non-Black employees.

33. Plaintiff reasonably and in good faith believed she was opposing race discrimination.

34. Plaintiff also learned that other Black employees and executives had complained about Ms. Doolittle's allegedly racist, demeaning, and disparate treatment.

35. In January 2026, Plaintiff participated in an Executive Leadership Team meeting at which participants discussed Ms. Doolittle's interference in PPSE operations and concerns that she treated assertive Black female leaders

negatively and viewed the leadership team as having too many Black members.

36. Plaintiff opposed and objected to the reported race-based treatment.

**PPLA Assumes Management Responsibilities**

37. On January 28, 2026, PPSE announced that it had entered into a management agreement with PPLA.

38. PPSE explained that PPLA would provide interim leadership and immediate support concerning affiliate management, health-center operations, organizational planning, and human resources.

39. PPLA identified senior leaders who would become involved in PPSE's operations, including Rachel Rodriguez, PPLA's Chief People and Culture Officer.

40. PPLA's leadership thereafter exercised substantial influence and control over PPSE's human-resources operations and Plaintiff's continued employment.

41. PPLA's human-resources leadership met with Plaintiff concerning PPSE's operations, Plaintiff's duties, and the organizational transition.

**Plaintiff Complains to PPLA**

42. On or about February 2, 2026, Plaintiff met with Ms. Rodriguez.

43. Ms. Rodriguez praised Plaintiff's financial acumen, leadership, and understanding of PPSE's business and did not identify any performance concern.

44. During that meeting, Plaintiff told Ms. Rodriguez that Ms. Doolittle had engaged in racist and biased conduct, had interfered with PPSE operations, and had contributed to a hostile working environment.

45. Plaintiff also informed Ms. Rodriguez that other Black leaders and employees had raised similar or related concerns regarding Ms. Doolittle.

46. Ms. Rodriguez expressed concern and indicated that Plaintiff's allegations would be escalated.

47. Plaintiff also advised Ms. Rodriguez of operational and competency limitations affecting the less-senior HR employee whom Defendants later claimed could perform PPSE's daily HR work with remote PPLA support.

48. On or about February 5, 2026, Plaintiff again raised concerns about racially disparate treatment.

49. During a discussion with PPSE's Chief Operating Officer, Plaintiff was told that she needed to learn that "white is right" and that she was making too many complaints about sensitive subjects.

50. Plaintiff understood that statement as a warning that her continued objections to perceived race discrimination were unwelcome, and she reiterated her race-discrimination concerns to senior leadership.

51. On or about February 9 and February 10, 2026, Plaintiff objected to what she perceived as racially disparate treatment in the use of retention or "save" interviews as compared with exit interviews.

52. Plaintiff observed that non-Black employees were offered opportunities to remain, transition, return, or receive contractual work, while Black leaders were treated as exit-only employees.

53. Plaintiff's complaints concerned conduct she reasonably and in good faith believed violated federal laws prohibiting race discrimination.

**Defendants Terminate Plaintiff**

54. On February 13, 2026, Ms. Rodriguez met with Plaintiff and communicated Defendants' decision to terminate her employment.

55. Defendants told Plaintiff that her position was being eliminated for cost-saving or restructuring reasons and that PPLA could absorb her duties and remotely support the remaining HR employee.

56. Plaintiff asked whether she was the only employee affected by the asserted reduction and was told that she was.

57. Plaintiff asked whether Defendants would return her to her former Director position or former compensation level if the concern was financial. Defendants refused.

58. During the termination meeting, Defendants confirmed that Plaintiff had no performance problems.

59. Plaintiff stated that she believed Ms. Doolittle had directed the termination and that it resulted from Plaintiff's race-discrimination complaints.

60. Defendants terminated Plaintiff only days after her complaints to PPLA's Chief People and Culture Officer and other senior leaders and less than one month after promoting her.

61. PPLA participated in, approved, authorized, ratified, and/or carried out the termination decision after receiving notice of Plaintiff's protected activity.

**Evidence of Pretext**

62. PPSE promoted Plaintiff and increased her salary less than one month before terminating her.

63. Neither Defendant identified a performance basis for Plaintiff's termination, and PPLA praised Plaintiff's performance and judgment shortly before terminating her.

64. Defendants asserted that PPLA could absorb Plaintiff's duties and support the remaining HR employee even though Plaintiff had informed PPLA of that employee's documented performance and competency limitations.

65. Defendants retained the less-senior HR employee while terminating Plaintiff, PPSE's recently promoted senior HR leader.

66. The asserted reduction affected only Plaintiff.

67. Defendants did not identify or apply legitimate, neutral reduction-in-force criteria to Plaintiff, and Plaintiff was not included in any legitimate reduction planning despite being PPSE's senior HR leader.

68. Defendants offered inconsistent or shifting explanations for Plaintiff's termination, including cost savings, restructuring, elimination of work, and PPLA's absorption of Plaintiff's duties.

69. The timing of the decision, Defendants' knowledge of Plaintiff's complaints, the absence of performance concerns, Plaintiff's recent promotion, and weaknesses in Defendants' explanation support the inference that the stated reason was pretext for race discrimination and retaliation.

**Plaintiff's Damages**

70. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered lost wages, lost benefits, diminished earning capacity, emotional distress,

mental anguish, humiliation, embarrassment, and loss of professional standing.

71. Plaintiff has incurred and will continue to incur attorneys' fees, expenses, and costs.

**COUNT I**
**RACE DISCRIMINATION UNDER TITLE VII**
**(Against PPSE)**

72. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

73. Plaintiff is Black, was qualified for her position, and performed her job satisfactorily.

74. PPSE terminated Plaintiff's employment and treated her less favorably than similarly situated non-Black employees.

75. Non-Black employees received more favorable treatment, including retention opportunities, contractual opportunities, reinstatement, or protection despite performance or conduct concerns.

76. Plaintiff's race was a motivating factor in PPSE's decision to terminate her employment.

77. PPSE's stated reason for terminating Plaintiff was false and pretextual.

78. PPSE discriminated against Plaintiff because of her race in violation of Title VII.

**COUNT II**
**RETALIATION UNDER TITLE VII**
**(Against PPSE)**

79. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

80. Plaintiff engaged in protected activity when she opposed race discrimination and complained that Black leaders and employees were being treated more harshly than non-Black employees.

81. Plaintiff communicated her complaints to PPSE's CEO, outside counsel, Chief Operating Officer, and other senior leadership and to the PPLA human-resources executive exercising management authority over PPSE.

82. PPSE knew about Plaintiff's protected activity.

83. PPSE terminated Plaintiff shortly after her protected complaints because she opposed race discrimination and reported racially disparate treatment.

84. Plaintiff's protected activity was a but-for cause of PPSE's termination decision.

85. PPSE's stated reason for terminating Plaintiff was false and pretextual.

86. PPSE retaliated against Plaintiff in violation of Title VII.

**COUNT III**
**RACE DISCRIMINATION UNDER 42 U.S.C. § 1981**
**(Against Both Defendants)**

87. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

88. Plaintiff's at-will employment relationship with PPSE constituted a contractual relationship protected by 42 U.S.C. § 1981.

89. Plaintiff had the same right as white employees to make, perform, enforce, and enjoy the benefits, privileges, terms, and conditions of that contractual employment relationship.

90. PPSE intentionally terminated, and PPLA intentionally participated in, caused, authorized, ratified, and/or carried out the termination of, Plaintiff's contractual employment relationship because of Plaintiff's race.

91. But for Plaintiff's race, Defendants would not have impaired or terminated Plaintiff's contractual employment relationship.

92. Defendants violated 42 U.S.C. § 1981.

**COUNT IV**
**RETALIATION UNDER 42 U.S.C. § 1981**
**(Against Both Defendants)**

93. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

94. Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when she opposed race discrimination and racially disparate treatment.

95. Defendants knew that Plaintiff had engaged in protected activity.

96. PPSE terminated, and PPLA participated in, caused, authorized, ratified, and/or carried out the termination of, Plaintiff's employment because she opposed race discrimination.

97. Plaintiff's protected activity was a but-for cause of Defendants' decision to terminate her employment.

98. Defendants violated 42 U.S.C. § 1981.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants and award:

(a) A declaration that PPSE violated Title VII and that Defendants violated 42 U.S.C. § 1981;

(b) Back pay, front pay or reinstatement, lost benefits, and other economic relief;

(c) Compensatory damages for emotional distress, mental anguish, humiliation, embarrassment, and other non-economic injuries;

(d) Punitive damages;

(e) Prejudgment and post-judgment interest;

(f) Reasonable attorneys' fees, litigation expenses, and costs;

(g) Appropriate equitable relief, including neutral-reference and non-interference relief;

(h) A jury trial on all issues so triable; and

(i) Such other and further relief as the Court deems just and proper.

Respectfully submitted this 10th day of September, 2026.

**THE MIXON LAW FIRM**
*/s/ J. Stephen Mixon*
J. Stephen Mixon
Georgia Bar No. 514050
The Mixon Law Firm
3344 Peachtree Road N.E., Suite 800
Atlanta, Georgia 30326
Telephone: 770-955-0100
Email: steve@mixon-law.com
Counsel for Plaintiff Shaniq Carmichael